IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

SOUTHERN DISTRICT OF MISSISSIPPI
FILED
FEB 12 2015
ARTHUR JOHNSTON
BY_____ DEPUTY

NVISION SOLUTIONS, INC.
    PLAINTIFF

VERSUS                        CAUSE NO. 1:15cv41 HSO-JCG

HUNTER TECHNOLOGY CORPORATION
    DEFENDANT

## COMPLAINT

### JURY TRIAL DEMANDED

**COMES NOW** Plaintiff, NVision Solutions, Inc. ("NVision"), by and through counsel of record, and files this *Complaint* against Defendant Hunter Technology Corporation ("Hunter"), and would show unto the Court the following to wit:

### I.

### THE PARTIES

1. Plaintiff, NVision, is a corporation organized and existing under the laws of the State of Mississippi, with principal office and place of business located at 21294 Johnson Road, Long Beach, Mississippi 39560. NVision is licensed to do business in Mississippi and conducts substantial business herein.

2. Defendant, Hunter, is corporation organized and existing under the laws of the State of California, with principal office and place of business located at 2921 Corvin Drive, Santa Clara, California 95051. Hunter can be served with process by service on its agent for service, Tom French, 1075 Curtis Avenue, Menlo Park, CA 94025.

3. During a portion of the contract at issue, the work was performed by Spinnaker, which was a wholly owned subsidiary of Hunter. Spinnaker is now merged completely with Hunter. As used in this complaint, the actions alleged of Hunter are one-in-the-same as those of Spinnaker.

## II.

## SUBJECT MATTER, PERSONAL JURISDICTION AND VENUE

4. This Court has jurisdiction over the subject matter and Defendants in this case pursuant to 28 U.S.C. §1332 because of complete diversity of citizenship between Plaintiff and Defendant.

5. Venue in this cause is proper in this Court pursuant to 28 U.S.C. §1391 because this suit involves a contract to be delivered in this judicial district, and the conduct acts and/or omissions upon which this cause of action is based occurred in substantial part within the United States District Court for the Southern District of Mississippi, Southern Division.

## III.

## FACTS

A. **The Government Contracts with NVision and Hunter Solicits Work.**

6. Naval Air Warfare Center AD ("Government") originally contracted with Applied Geo Technologies, Inc., ("Geo") to perform a scope of work

   on July 9, 2008. (See attached as Exhibit "A" the original contract between the Government and Applied Geo).

7. Subsequent to the original contract, the following amendments occurred to that original agreement:

 a. P00001 on July 30, 2008;

 b. P00002 on November 17, 2008;

 c. P00003 on January 8, 2009;

 d. P00004 on December 15, 2009;

 e. P00005 on March 26, 2010;

 f. P00006 on April 13, 2010;

 g. P00007 on August 10, 2010;

 h. P00008 on March 14, 2011;

 i. P00009 on October 3, 2011;

 j. Unnumbered amendment on October 4, 2012;

 k. P00011 on December 20, 2012;

 l. Unnumbered amendment on May 15, 2013;

 m. P00013 on June 26, 2013; and

 n. P00014 on April 21, 2014.

(See attached *en globe* Exhibit "B").

  8. By the document executed on October 4, 2012, referenced in "j" above, the original contract between the Government and Applied Geo was

novated—including the contract and scope of work—to NVision. (See Exhibit "B" at October 4, 2012 Amendment).

9. Following the novation of the agreement from Geo to NVision, Spinnaker contacted NVision and solicited it to enter into a contract for the completion of certain work items under the scope of work between NVision and the Government. Spinnaker represented that it could and would complete the scope of that work and comply with the timeframes required. Those misrepresentations were false, and were made by Spinnaker intentionally, negligently, and/or fraudulently.

10. Based on the representations from Spinnaker—in advance of the purchase orders ultimately issued from NVision to Hunter—that it could and would timely and fully complete the work, NVision contracted with Hunter for that work and issued orders to Hunter for the fulfillment of the agreement.

11. At all times material hereto, Hunter knew or should have known that NVision's contract with the Government made time of the essence and that contract time, hence, material. The contract between the Government and NVision specifically provided for accelerated acquisition and provided a strict development and test schedule, with which NVision (and its subcontractor, here Hunter) had to comply.

12. Hunter knew at all times—and its knowledge is indicated by its signatures on the orders—that each of the orders and contracts had a Defense Priorities and Allocations System Program "DPAS" 2 rating. The DPAS 2 rating

specifies that under the federal contract, both the government contractor and the subcontractor, here, NVision and Hunter respectively, are obligated to prioritize the work above all other work, except for other work having higher DPAS ratings.

13. The Chief Executive Officer of Hunter acknowledged the importance and priority of the NVision contract under federal law given its DPAS 2 rating.

14. The priority of scheduling of the production and delivery of DPAS rated contracts is found in federal law.

15. 15 C.F.R. Section 700.14 provides in relevant part that "contractors and suppliers receiving rated orders shall give the rated orders priority over other contracts as needed to meet delivery requirements."

16. Despite that law, which was incorporated into the agreements, and Hunter's knowledge of the provision, Hunter failed to prioritize NVision's work as required by the DPAS rating, yet represented to NVision that it would.

17. Hunter misrepresented—negligently or intentionally—to NVision that Hunter was ready, able and willing to perform the work within the timeframe needed within both the NVision contract with the Government and the NVision agreement with Hunter. In fact, Hunter was not ready, able and willing to perform the purchase orders and agreements within that timeframe. Hunter's negligent and or intentional misrepresentation's resulted in the agreement between NVision and Hunter, and ultimately resulted in losses and damage to NVision. NVision would not have provided

that work to Hunter or entered those contracts with Hunter if not for Hunter's negligent, false and intentional misrepresentations. Further, Hunter's misrepresentations that it would perform the work timely and pursuant to the contract made NVision rely on them such that NVision forwent its ability to hire and retain contractors to perform the work who—unlike Hunter—would have been able to timely, promptly and fully perform the work.

### B. NVision's Purchase Orders and Contracts with Hunter

18. On or around January 24, 2013, NVision contracted with Hunter through purchase order #01232013B. (See attached Exhibit "C"—PO #01232013B).
19. Exhibit "C" hereto is a true and correct copy of PO #01232013B.
20. PO #01232013B was DPAS rated and held a DPAS rating of DO-C9. (Id.).
21. Through PO #01232013B, Hunter agreed to perform Phase I Preliminary Design and completion of the Technical Proposal SMI-Q5562 and the Statement of Work included in the purchase order. (Id.).
22. PO #01232013B provided for completion of the Phase I Preliminary Design within six weeks of the requisition order, by or before March 8, 2013. (Id.).
23. Hunter did not comply with the timeframe required of PO #01232013B.
24. NVision paid Hunter $45,900.00 for PO #01232013B.
25. On or around April 23, 2013, NVision contracted with Hunter through purchase order #04232013A. (See Attached Exhibit "D"—PO #04232013A).
26. Exhibit "D" hereto is a true and correct copy of PO #04232013A.

27. PO #04232013A was DPAS rated and held a DPAS rating of DO-C9. (Id.).

28. Through PO #04232013A, Hunter agreed to perform Phase II Critical Design of Frequency Synthesizer and Modulator and to complete Technical Proposal SMI-Q5562 and the Statement of Work included in the purchase order. (Id.).

29. PO #04232013A provided for completion of the Phase II Critical Design within sixteen weeks of the requisition order, by or before August 12, 2013. (Id.).

30. Hunter did not comply with the timeframe required by PO #04232013A.

31. Hunter did not complete the work required by PO #04232013A.

32. On or around June 3, 2013, NVision contracted with Hunter through purchase order #06032013D. (See Attached Exhibit "E"—PO #06032013D).

33. Exhibit "E" hereto is a true and correct copy of PO #06032013D.

34. PO #06032013D was DPAS rated and held a DPAS rating of DO-C9. (Id.).

35. Through PO #06032013D, Hunter agreed to produce two Frequency Synthesizer and Modulator units. (Id.).

36. PO #06032013D provided for completion of the two Frequency Synthesizer and Modulator units by October 2013. (Id.).

37. Hunter did not comply with the timeframe required by PO #06032013D.

38. Hunter did not complete the work required by PO #06032013D.

39. On or around October 14, 2013, NVision contracted with Hunter through purchase order #092821013E (See Attached Exhibit "F"—PO #09282013E).

40. Exhibit "F" hereto is a true and correct copy of PO #09282013E.

41. PO #09282013E was DPAS rated and held a DPAS rating of DO-C9. (Id.).

42. Through PO #09282013E, Hunter agreed to perform Phase III RF Synthesizer with Modulation, in accordance with the Statement of Work for Phase III, Document #10022013. (Id.).

43. PO #09282013E provided for completion of the Phase III RF Synthesizer with Modulation as: 1) completion and delivery of Engineered Development Unit 001 by November 8, 2013; 2) completion and delivery of Engineered Development Unit 002 by December 20, 2013; 3) completion and delivery five Production Prototype Units by January 24, 2014; and 4) completion and delivery of the upgrade Engineered Development Units by February 21, 2014. (Id.).

44. Hunter did not comply with the timeframe required by PO #09282013E.

45. Hunter did not complete the work required by PO #09282013E.

46. Following that failure, NVision provided Hunter further opportunities for performance, and entered a new agreement on or around October14,

2013, implementing a delivery requirement of November 8, 2013. Hunter again failed to comply with that timeframe.

47. In November 2013, the Chief Executive Officer of Hunter contacted Joel Lawhead of NVision. During that conversation, the CEO of Hunter indicated that he was aware of the requirements of DPAS.

48. Through each of the purchase orders listed above, Hunter acknowledged the requirements imposed by DPAS contracts, and indicated that it was ready, able and willing to complete the work as required and to engage and enlist adequate staffing to comply with those purchase orders. Those representations were false. Hunter did not adequately staff the projects, nor intent to timely and fully complete those purchase orders. NVision relied on those misrepresentations to its detriment. NVision provided the purchase orders to Hunter and forewent other contractors.

49. Following those repeated failures of Hunter to comply with the timeframes dictated by the Government and the purchase orders, NVision was forced to approach the Government for a schedule slip in December 2013 to allow NVision to attempt to comply with its Government contract.

50. Following NVision's requested schedule slip in December 2013, NVision entered purchase orders NVS-3078 and NVS-3075 with Hunter.

51. Throughout the time period until Spring 2014, Hunter fraudulently, negligently and/or intentionally concealed from NVision the fact that it had

not adequately staffed the purchase orders to comply with the required timeframes. Because of those actions, NVision issued and kept those purchase orders through Hunter, and NVision incurred costs and delays related to Hunter's failures.

52. Hunter executed purchase orders (NVS-3075 and NVS-3078) on January 20, 2014.

53. A true and correct copy of purchase order NVS-3075 is attached hereto as Exhibit "G."

54. A true and correct copy of purchase order NVS-3078 is attached hereto as Exhibit "H."

55. Through Purchase Order NVS-3078, Hunter agreed to provide delivery and acceptance of an Engineered Prototype Unit per Statement of Work 10022013 Rev. C, and to provide delivery and acceptance of an Engineered Prototype Unit Technical Data Package, Design Review for authorization to build six units. (Exhibit "H").

56. Purchase Order NVS-3078 was DPS rated D0-C9. (Id.).

57. Purchase Order NVS-3078 required completion, delivery and acceptance of the Engineered Prototype Unit by January 21, 2014, and of the Engineered Prototype Unit Technical Data Package, Design Review by January 22, 2014. (Id.).

58. Hunter failed to comply with the timeframe required by NVS-3078 and it did not complete that work or provide functional items.

59. Through Purchase Order NVS-3075, Hunter agreed to produce and deliver up to six Frequency Synthesizer/Modulators per Statement of Work 10022013 Rev. C. (Exhibit "G").

60. Hunter was required to complete NVS-3075 by March 17, 2014. (Id.).

61. Hunter failed to comply with the timeframe required by NVS-3075 and it did not complete that work or provide functional items.

62. None of the items provided by Hunter to NVision under the NVS-3075 were accepted by .NVision or the Government. Those items were not functional.

63. Because of Hunter's failures, NVision was unable to meet the Pilot Production Units and Test Readiness Review milestones required under NVision's contract with the Government. NVision complied with all other contract timeframes under its agreement with the Government. It would have met all milestones of the contract but for Hunter's failures.

64. Because of Hunter's failures, NVision lost the production portion of that contract, which would have allowed NVision to produce the items for the Government. That portion of the agreement contemplated both manufacturing and production phases. Because of Hunter's failures, and false and fraudulent misrepresentations, NVision was not able to provide the Government an operable item as required by the agreement. The loss of that portion of the contract work—resulting from Hunter's failures—resulted in losses to NVision of approximately Thirty-Five Million U.S. Dollars.

65. Further, Hunter's breach of contract, negligence, and misrepresentations were the proximate and efficient cause of loss of business opportunity, loss of amounts paid to Hunter under the agreement, loss of future profits, as well as other losses and damages to be shown at trial, as well as attorneys' fees, interest, costs and punitive damages. Hunter is liable to NVision for punitive damages as all of the actions complained of herein were performed in bad faith, breaching its duty of good faith and fair dealing required under Mississippi law, and they were performed with reckless disregard for NVision's rights, through fraud, and intentionally.

## COUNT I.

## BREACH OF CONTRACT, NEGLIGENT BREACH OF CONTRACT

## AND

## BAD FAITH BREACH OF CONTRACT

66. Plaintiff hereby incorporates by reference each and every allegation set forth in the *Complaint* as if completely restated herein.
67. Hunter breached its agreements with NVision for the performance of the work, failing to perform the work as required under the agreements and failing to meet the timeframes imposed. Hunter so breached the agreements in bad faith, breaching its duty of good faith and fair dealing, and doing such with willful and wanton disregard for NVision's rights, intentionally and through fraud.

68. Hunter's actions and breaches of the contract were the proximate and efficient cause of damages and loss to NVision, and NVision is entitled to restitutionary disgorgement, actual and consequential damages, attorney's fees, interest, costs and punitive damages.

## COUNT II.

## INTENTIONAL OR NEGLIGENT MISREPRESENTATIONS AND FRAUDULENT MISREPRESENTATIONS AND CONCEALMENT

69. Plaintiff hereby incorporates by reference each and every allegation of this *Complaint* as if completely restated herein.

70. As an inducement to be given the contract by NVision, Hunter made intentional, negligent and/or fraudulent misrepresentations to NVision that it was ready, willing and able to comply with the contract and meet the timelines imposed by it. In fact, Hunter had no intention of complying with the agreement or its timeframes, but rather hoarded the work, with NVision's orders sitting unattended and without work by Hunter for extended periods of time, though the contract times and even thereafter. Hunter further represented in the purchase orders that it acknowledged the requirements of the DPS timelines, and would comply with them, and had accordingly properly mobilized assets and personnel to meet the requirements. Hunter likewise made those representations to NVision throughout the timeline of the work. Hunter had not, however, made such provisions to comply with the requirement timeframes.

71. As a direct and proximate result of Hunter's misrepresentations, NVision awarded Hunter the work when it otherwise would not have. NVision knew it had to comply with the Government's timeframes, and would not have awarded the contract to Hunter if it had known it was not ready, willing or able to perform the work.

72. NVision's losses were the proximate and efficient cause of Hunter's misrepresentations, and it should be awarded actual, consequential, attorney's fees, interest, costs and punitive damages.

## COUNT III.

## PUNITIVE DAMAGES

73. Plaintiff hereby incorporates by references the prior paragraphs of this Complaint as if completely restated herein.

74. All of the actions complained of herein—constituting the acts and omissions of Hunter—were performed with willful, wanton and reckless disregard for NVision's rights, and breaching the good faith and fair dealing required under the agreement, and constitute actual fraud. As such, NVision is entitled to punitive damages from Hunter.

## PRAYER FOR RELIEF

75. Plaintiff hereby incorporates by reference each and every allegation set forth in this *Complaint* as if completely restated herein.

76. As a direct and proximate result of Defendant's negligent, grossly negligent, willful conduct, and reckless disregard for Plaintiff's rights, breach of contract, breach of duty of good faith and fair dealing, bad faith and tortuous breach of contract, misrepresentations and fraud, Plaintiff is entitled to the following relief:

    a. Actual damages and restitutionary disgorgement;

    b. Prejudgment and post-judgment interest;

    c. Compensatory damages, consequential damages and extra-contractual damages Plaintiff suffered as a direct, proximate or efficient result of Defendant's acts and omissions;

    d. Extra-contractual, punitive and exemplary damages for Defendant's negligent, tortious, intentional, willful, wanton, grossly negligent and reckless disregard for Plaintiff's rights under the contract; and

    e. All other relief this Court deems appropriate.

PLAINTIFF

By: _____
Gary M. Yarborough, Jr. (MS Bar No. 102310)
Yarborough Law Firm, PLLC
845-B Highway 90
Bay Saint Louis, MS 39520
T. (228) 467-5771
F. (228) 467-5774
E. ylf.garyyarborough@att.net